UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

J.P., et al.,                                          )
                                                      )
                    Plaintiffs,                       )
                                                      )
          v.                                          )    No. 1:25-cv-00958-SEB-CSW
                                                      )
MONROE COUNTY COMMUNITY                               )
SCHOOL CORPORATION,                                   )
                                                      )
                    Defendant.                        )

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

Now before the Court is Defendant's Partial Motion to Dismiss [Dkt. 17], filed

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs J.M., individually, and on

behalf of her minor son, J.P. (collectively, "Plaintiffs") have brought this lawsuit against

Defendant Monroe County Community School Corporation (the "School"), alleging that

J.P. was physically abused by the School's paraprofessional, after which he was subjected

to disparate treatment by the School in violation of federal and state law.  Defendants

seek dismissal of six of Plaintiff's twelve claims: Count II (42 U.S.C. § 1983), Count IV

(Intentional Infliction of Emotional Distress); Count VII (Negligent Infliction of

Emotional Distress); Count VIII (Negligent Supervision and Training); Count XI

(Discrimination on the Basis of Association); and Count XII (Failure to Investigate).  For

the reasons detailed below, we GRANT Defendant's Partial Motion to Dismiss.

1

**Factual Background**

J.P., is a 22-year-old student who has been diagnosed with autism.  Compl. ¶ 13. Among other things, J.P.'s autism affects his ability to communicate, particularly in verbal interactions; his ability to regulate his emotions, often resulting in repetitive sounds, movements, vocal tics; and his ability to independently perform daily tasks such as tying his shoes, selecting weather-appropriate clothing, showering, and wiping after toileting. *Id.* ¶¶ 14–16.  J.P. graduated with his diploma in 2022 but continues to receive services from the School through the Panther University Program (the "Program"), which focuses on job-readiness, including volunteering and job trials, as well as building independence, executive functioning skills, and social development.  *Id.* ¶ 18.

As part of the Program, J.P. receives daily, direct support from a paraprofessional educator.  *Id.* ¶ 20.  Plaintiffs allege that the paraprofessional assigned to assist J.P. in the fall of 2024 physically abused J.P. while transporting him to and from school by repeatedly hitting him on the forehead and spraying him with a water bottle.  *Id.* ¶¶ 22–24.  Following an investigation into the allegations, the School removed J.P. from the paraprofessional's care and later transferred the paraprofessional to another school, but did not reprimand or terminate the paraprofessional (who subsequently was reported for abusing another student).  *Id.* ¶¶ 27, 34.

Due to the trauma caused by the physical abuse, J.M. removed J.P. from the School for approximately two months after which he returned with the assistance of a new paraprofessional.  *Id.* ¶¶ 32–33.  Plaintiffs allege in this lawsuit that the School's

2

disparate treatment of J.P. harmed him and his family and caused them to suffer financially and emotionally. *Id.* ¶ 35.

## Legal Analysis

### I.    Applicable Legal Standard

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In this procedural context, the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must suffice to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II.    Discussion

Defendant seeks dismissal of the following six claims alleged by Plaintiffs: Count II (42 U.S.C. § 1983), Count IV (Intentional Infliction of Emotional Distress); Count VII (Negligent Infliction of Emotional Distress); Count VIII (Negligent Supervision and Training); Count XI (Discrimination on the Basis of Association); and Count XII (Failure

3

to Investigate).  (Counts IV, VII, and VIII are state law claims.)  We address the parties' arguments below.

### A.    Count II

The School seeks dismissal of Plaintiffs' § 1983 claim as alleged in Count II on the following two grounds: first, that it is duplicative of Plaintiffs' Fourteenth Amendment claim alleged in Count I, and second, that it fails to adequately allege a basis for liability under *Monell v. v. Department of Social Services*, 436 U.S. 658 (1978).

We agree that Plaintiffs' Fourteenth Amendment and Section 1983 claims are not separate, standalone claims.  "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).  Additionally, Fourteenth Amendment claims cannot be brought as a direct cause of action, as Section 1983 is the proper vehicle by which to bring those claims.  *See id.*; *Baxter by Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 732 n.3 (7th Cir. 1994) (superseded by statute on other grounds).  However, while inartful, the manner in which Plaintiffs elected to structure their complaint, to wit, by physically separating the allegations of a Fourteenth Amendment claim in Count I from a standalone Section 1983 claim in Count II is not alone a basis for dismissal.  As other courts have done, we will conduct the Section 1983 analysis as though the claim encompasses the Fourteenth Amendment claim and decide whether Plaintiffs pleaded facts sufficient to support a plausible claim that the School violated their constitutional equal protection rights.

Here, Plaintiffs have sued only the School and have not named the School's employees as defendants in their individual capacities. Accordingly, Plaintiffs' Fourteenth Amendment equal protection claim against the School is governed by the requirements set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny. Under *Monell*, "a municipal entity is not vicariously liable for the constitutional torts of its employees" and instead "may be liable only for conduct that is properly attributable to the municipality itself." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th Cir. 2022) (internal quotations and citations omitted). Courts are required to apply "rigorous standards of culpability and causation" to prevent municipal liability from collapsing into *respondeat superior* liability. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Therefore, "misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

A constitutional deprivation attributable to a municipality occurs only "when execution of a government's policy or custom inflicts the injury." *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (quotation marks and citation omitted). A plaintiff can allege that a constitutional violation resulted from the execution of a municipal policy or custom in the following three ways: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)). Additionally, the policy or practice "must be the direct cause or moving

force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation and internal quotation marks omitted).

In determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to whether the plaintiff has alleged facts which support a plausible inference that "there is a policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). "This may take the form of an implicit policy or a gap in expressed policies, or a series of violations to lay the premise of deliberate indifference." *Id.* (cleaned up and internal citations and quotation marks removed).

In the case before us, Plaintiffs' complaint fails to allege facts that plausibly suggest that their constitutional injuries were caused by a widespread practice rather than a random event. Plaintiffs allege cursorily that the School "has a widespread pattern and practice of discriminating against disabled students by not providing them with the same protections as other students or punishing them more frequently for similar behaviors" and that these "policies and practices have had a disparate and disproportionate impact on disabled students." Compl. ¶¶ 46–47. However, beyond this broad assertion that such a custom or practice exists, Plaintiffs have failed to allege any facts in the complaint that tie any such alleged custom or practice to their particular injuries. Nor have Plaintiffs alleged any facts that plausibly suggest that any such custom or practice "was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). Further, Plaintiffs do not allege that any other student previously experienced similar mistreatment

to that which J.P. and his family are said to have suffered nor that J.P. himself was ever previously denied protections afforded to non-disabled students or was punished more frequently than others outside his protected class.  Without such allegations, Plaintiffs' complaint fails to plausibly state a claim that a widespread custom or practice caused their injuries.  *See Neal v. Indianapolis Fire Dep't*, No. 1:20-cv-02921-TWP-MG, 2022 WL 2106143, at *12 (S.D. Ind. June 10, 2022) ("When a plaintiff claims a municipality acted through a widespread practice, he must allege more than one instance of misconduct; a series of violations must be presented to lay the premise of deliberate indifference under *Monell*.") (citation and internal quotation marks omitted).

For these reasons, Counts I and II, which comprise Plaintiffs' Fourteenth Amendment claim brought pursuant to Section 1983 are dismissed without prejudice.

## B.    Counts IV, VII, and VIII

The School challenges the sufficiency of three state law claims: Counts IV (Intentional Infliction of Emotional Distress), VII (Negligent Infliction of Emotional Distress), and VIII (Negligent Hiring and Supervision) based on Plaintiffs' failure to plead compliance with Indiana's Claims Against Public Schools Act ("CAPSA"), Ind. Code § 34-13-3.5, *et seq*.  CAPSA states:

> An individual or entity may not initiate a civil action or an administrative proceeding against a public school, unless the individual or entity submits a written notice to the public school … that notifies the public school … of the alleged violation of law and indicates a proposed remedy.

IND. CODE § 34-13-3.5-4.  "A proposed remedy … must … (1) [p]rovide the public school with a specific request for relief" and "(2) [a]llow the public school to offer the

7

individual … the relief requested … before the individual or entity initiates a civil action … against the public school." IND. CODE § 34-13-3.5-5. Upon receiving notice, the school may "[r]emedy the alleged violation" or "[m]ake a written offer to the individual or entity to resolve the dispute." IND. CODE § 34-13-3.5-6. "If an individual or entity does not submit the notice [required by the statute] to a public school before initiating a civil action or an administrative proceeding, a court … *shall dismiss* the action without prejudice." IND. CODE § 34-13-3.5-7 (emphasis added).

The Indiana Court of Appeals recently addressed important distinctions between CAPSA and the Indiana Tort Claims Act ("ITCA"), in *Mishler v. Union-North United School Corporation*, 236 N.E.3d 1142 (Ind. Ct. App. 2024). In *Mishler*, the Court held that, unlike the ITCA, which is an affirmative defense, CAPSA functions "as a firm procedural prerequisite to the filing of a lawsuit" and "a plaintiff's failure to satisfy prerequisites to filing suit can subject the complaint to dismissal for failure to state a claim upon which relief can be granted." *Id.* at 1147, 1148 (internal quotation marks and citation omitted).

Here, Monroe County Community Schools is a public-school corporation under Indiana Code § 20-18-2-16(a), and Plaintiffs' complaint does not aver compliance with CAPSA. In response to the School's motion to dismiss, Plaintiffs contend that they substantially complied with CAPSA by providing the School their January 30, 2025 Tort Claim Notice (the "Notice") prior to filing this lawsuit on May 16, 2025. However, the Notice does not substantially comply with the CAPSA as it omits any "specific request for relief"; thus, it provided the School no opportunity to provide the requested remedy,

8

indeed, no relief at all was requested. Accordingly, the Notice demonstrably fails to satisfy the purpose of CAPSA, namely, to "protect public resources set aside for education" by "ensur[ing] that schools would have a meaningful opportunity to weigh the costs of litigation against the costs of providing the proposed remedy." *Mishler*, 236 N.E.3d at 1148.

For these reasons, Counts IV, VII, and VIII of Plaintiffs' complaint are dismissed without prejudice for failure to comply with CAPSA.

### C.       Count XI

The School also seeks dismissal of J.M.'s claim[1] of associational discrimination as set out in Count XI. Regardless of whether J.M. grounds her associational discrimination claim on Title II of the ADA or on Section 504 of the Rehabilitation Act of 1973, she must adequately plead a direct and distinct injury-in-fact that she experienced based on her association with J.P., a disabled individual, in order to pursue such a claim. *See, e.g.*, *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1143 (11th Cir. 2014) ("[T]he threshold for associational standing under both the [Rehabilitation Act] and the ADA is the same: non-disabled persons have standing to seek relief under either statute only if they allege that they were personally excluded, personally denied benefits, or personally discriminated against because of their association with a disabled person."); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 672 (S.D. Ind. 2015) ("An associated individual

---

[1] Although Plaintiffs refer to Count XII as "Plaintiffs' claim," the complaint contains no allegation that J.M. is herself disabled. Accordingly, J.P. has not plausibly alleged an associational claim on his own behalf.

is not permitted to sue just because the disabled individual is injured, but only when the associated individual is herself injured.") (quotation marks and citation omitted); *Micek v. City of Chicago*, No. 98 C 6757, 1999 WL 966970, at *3 (N.D. Ill. Oct. 4, 1999) ("[T]he plaintiff bringing an associational discrimination claim [must] suffer some specific, separate, and direct injury as a result of [her] association with the disabled individual.").

Here, the complaint lacks sufficient factual allegations giving rise to a plausible inference that J.M. was personally excluded from participation in or denied the benefits of a covered activity or personally subjected to discrimination because of J.P.'s disability. Plaintiffs allege only that, as a result of J.M.'s advocacy on behalf of J.P., she was "treated differently and was denied access to the same benefits and services available to other families at [the School]," (Compl. ¶ 102), and "suffered emotionally and financially," (*id.* ¶ 103), because the School failed to reprimand the paraprofessional or provide J.P. with accommodations to protect him from abuse requiring J.M. to keep J.P. home from school for more than a month to ensure his safety. *Id.* ¶¶ 22–27.

As the School argues, these allegations do not amount to an exclusion, benefit denial, or act of discrimination or retaliation against J.M. personally. Rather, the alleged failure to discipline the paraprofessional or implement accommodations affected J.P.'s learning environment, not J.M.'s rights. Additionally, while keeping J.P. at home may have caused logistical and financial difficulties for J.M., such facts do not suggest that J.M. was *personally* discriminated against. Rather, the treatment of J.P. remains "at the center of the dispute" and J.M.'s injury, if any, was merely "an outgrowth" of J.P.'s alleged mistreatment. *See Doe v. Twp. High Sch. Dist. 214*, No. 19-cv-3052, 2020 WL 1081726,

at *6 (N.D. Ill. Mar. 6, 2020) (citing *Simenson v. Hoffman*, No. 95 C 1401, 1995 WL 631804, at *5–*6 (N.D. Ill. 1995) (dismissing associational claim where disabled child's parents were ejected from the hospital along with the child upon the child's being refused medical care because "the treatment of the child [was] at the center of the dispute").

For these reasons, Count XI is dismissed without prejudice.

### D.      Count XII

Finally, the School seeks dismissal of Plaintiffs' failure to investigate claim alleged in Count XII on the grounds that it asserts no independent cause of action and is merely derivative of Plaintiffs' other claims.  In Count XII, Plaintiffs allege that J.P.'s parents reported to School officials that he was being "bullied, threatened, and harassed" by the School's staff, and that, although the School had a duty to investigate those claims of harassment, School officials were "either deliberately indifferent to these complaints or inadequately addressed them."  Compl. ¶¶ 105–109.  Plaintiffs' complaint does not identify the constitutional or statutory source of such a duty to investigate nor is it clear from the allegations under what legal theory Plaintiff is attempting to proceed.

Plaintiffs attempt to clarify the scope of Count XII in their response brief filed in opposition to the School's motion to dismiss, arguing that Count XII is "not based on a novel or abstract 'standalone duty to investigate,' but rather that Defendants acted with deliberate indifference to known, ongoing racial and disability-based mistreatment of a qualified student with a disability, in violation of the Rehabilitation Act, the Americans with Disabilities Act ('ADA'), and the Equal Protection Clause of the Fourteenth Amendment."  Dkt. 24 at 11.  In addition, in their response brief, Plaintiffs also refer for

the first time to the Fourteenth Amendment due process clause, arguing that Count XII plausibly alleges the "state created danger doctrine." *Id.* at 12–13.

We begin by noting that Plaintiffs' complaint contains no allegations regarding race-based discrimination or a state-created danger, and it is an "axiomatic rule that [plaintiffs] may not amend [their] complaint in [their] response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Additionally, as discussed above, to the extent that Plaintiffs may be attempting to assert a *Monell* claim against the School based on violations of their constitutional rights, they have failed to adequately allege that their injuries were caused by a policy or widespread practice of the School. We hold that insofar as Plaintiffs' allegations set forth in Count XII are in some way actionable, they are part and parcel of Plaintiffs' ADA and Rehabilitation Act claims, which remain pending, and do not state an independent cause of action.

For these reasons, Count XII is dismissed without prejudice.

**III.  Conclusion**

For the reasons detailed above, we <u>GRANT</u> without prejudice Defendant's Partial Motion to Dismiss [Dkt. 17]. The case as laid out in Counts III, IV, V, IX, and X will proceed accordingly.

IT IS SO ORDERED.

Date:  _____3/23/2026_____          _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jessica L. Billingsley
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
jbillingsley@cchalaw.com

Bridget Boland
Curlin & Clay Law, Association of Attorneys
bboland@curlinclaylaw.com

Shyann Ronea Boyer
CHURCH CHURCH HITTLE & ANTRIM
sboyer@cchalaw.com

Alexandra Marie Curlin
CURLIN & CLAY  LAW
amcurlin@curlinclaylaw.com